IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:10CR421 |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| KYLE BRENNER, | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the court on the Motion to Suppress Evidence (Filing No. 23) and Motion to Suppress Statements (Filing No. 25) filed by defendant Kyle Brenner (Brenner). Brenner is charged in the Indictment[1] with the March 8, 2009, receipt and distribution of child pornography (Count I) in violation of 18 § 2252A(a)(2) and the March 13, 2009, possession of child pornography (Count II) in violation of 18 U.S.C. § 2252(a)(4)(B) together with a Forfeiture Allegation in accordance with 18 U.S.C. § 2253. Brenner seeks to suppress evidence seized from his residence on March 13, 2009, by law enforcement officers and to suppress any statements he made to law enforcement officers on March 13, 2009. Brenner asserts the search warrant in question lacked probable cause insofar as information in the application for the search warrant was stale and Brenner's statement given at the time of the execution of the search warrant was improperly induced by promises given to Brenner.

    The court held a hearing on the motion on November 23, 2016. Brenner was present with his counsel, J. William Gallup. The United States was represented by Assistant U.S. Attorney Douglas R. Semisch. The court heard the testimony of Special Agent William Hugelman (Agent Hugelman) with the Department of Homeland Security, Immigration and Customs Enforcement and the defendant, Brenner. The court also received in evidence the following exhibits: an Application and Affidavit For Search

---

[1] The Indictment was filed in the District of Nebraska on November 16, 2010. In the meantime, Brenner relocated to the United Kingdom for employment purposes with Northrup Grumman at the Royal Air Force Base in Mildenhall, England. After Brenner was located in the United Kingdom, Brenner's extradition was sought from Great Britain in October 2014. (Filing Nos. 7, 11, and 14). Following extradition proceedings, Brenner was returned to Nebraska for arraignment on October 28, 2016 (Filing No. 15).

Warrant for 2310 Hancock Street, Bellevue, Nebraska, 68005 (Exhibit 1); a Search Warrant for 2310 Hancock Street, Bellevue, Nebraska 68005 (Exhibit 2); a Statement of Rights (Exhibit 3); and a Report of Investigation (Exhibit 4). A transcript (TR.) of the hearing was prepared and filed on December 1, 2016 (Filing No. 41).

## FINDINGS OF FACT

In January 2009, Agent Hugelman of the Omaha office of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations received a lead from a national investigation concerning child pornography which was targeting internet providers and websites that were providing child pornography (TR. 7). The lead for Omaha was to investigate an individual who had subscribed to one of the websites (TR. 8). Following the lead, the Omaha agents conducted surveillance of the suspected residence and caused subpoenas to be issued to corroborate some information (TR. 8). The last of the information received was in March 2009 (TR. 9). Agent Hugelman prepared a search warrant and contacted an Assistant U.S. Attorney (AUSA) for review and presentation to a magistrate judge in the District of Nebraska (TR. 9). AUSA Norris expressed a concern about the staleness of some of the information and asked for an explanation (TR. 10). Agent Hugelman informed AUSA Norris there was a national investigation and there were a lot of leads that had to be investigated regarding targets overseas and nationally (TR. 10). Following that discussion, the search warrant application was presented to a magistrate judge who issued the search warrant on March 10, 2009 (TR. 10-12; Exhibits 1 and 2). Agent Hugelman believed the warrant to be valid and based on sufficient probable cause (TR. 11).

On March 13, 2009, Agent Hugelman assembled a team to execute the search warrant at Brenner's residence at 2310 Hancock Street, Bellevue, Nebraska (TR. 12). Agent Hugelman did not obtain an arrest warrant for Brenner and had no plans to arrest Brenner the day of the search (TR. 13). The team consisted of a supervisor, nine agents, an administrative assistant and a uniformed Bellevue Police officer (TR. 29-30). When the team arrived at Brenner's residence an officer knocked and announced the law enforcement officers had a search warrant (TR. 13). The doorbell was rung multiple times;

whereupon, the officers breached the front door and fanned out throughout the house in a protective sweep (TR. 13-14).  Brenner was alone in the house in bed in an upstairs bedroom (TR. 16).  Brenner, clad only in his T-shirt, was removed from the bed, taken to the floor, and handcuffed by four or five officers (TR. 52).  After the house was cleared during the protective sweep in a few minutes, Brenner was taken to another room upstairs, allowed to put on more clothing, where his handcuffs were removed and Brenner was seated on a chair or bed (TR. 16, 38). Brenner was told the officers were there to serve a search warrant, that he was not under arrest, and that he was free to leave (TR. 18, 38).  Brenner was provided a copy of the warrant to read and was reminded that he was free to leave if he wanted (TR. 18).

     Agent Hugelman then read Brenner his **Miranda** rights by using a U.S. Immigration and Customs Enforcement Statement of Rights form (TR. 19-20).  Brenner was then given the form to read for himself, which he did (TR. 19-20).  Brenner was asked to sign the waiver after Agent Hugelman crossed off "was taken into custody" on the form, and Brenner signed the acknowledgment and waiver at 9:09 a.m. (TR. 20-23; Exhibit 3).  While Brenner was being interviewed, other agents completed a search of the house (TR. 24).  Brenner did not ask for an attorney during the interview nor did he ask to leave (TR. 21).  Brenner apologetically told Agent Hugelman he did not answer the door as he was sleeping and he had noisy equipment, such as fans, in the bedroom (TR. 22).  Brenner was fully cooperative during the interview which concluded around 10:04 a.m. when the agents left the residence (TR. 25).  When the interview concluded at approximately the same time of the search, the agents left the residence and Brenner remained (TR. 26-27).

     Brenner testified he was rousted nearly naked from his bed clad only in a T-shirt, taken to the floor, and handcuffed on the morning of March 13, 2009 (TR. 52).  Brenner testified he was taken to another bedroom and questioned by officers (TR. 53).  Brenner said he remained handcuffed and was told by the officers that if he answered some questions they would not arrest him and he could go to work (TR. 55-57).  Agent Hugelman testified he did not tell Brenner if Brenner answered questions he would not be arrested (TR. 22-23).  Further, Hugelman testified that at no time during the interview, Brenner stated he had to go to work (TR. 26).  The court finds Agent Hugelman's testimony and

3

version credible regarding the incidents relating to no promises made to Brenner in exchange for answering questions or not being arrested based on Agent Hugelman's experience and standard search warrant procedures. The court finds Brenner's version of the incidents regarding promises made to Brenner in exchange for answering questions or his not being arrested to be incredible and inconsistent with other credible facts.

The application for the search of Brenner's residence in Bellevue is set forth in Exhibit 1. The application sets forth a massive investigation by the Department of Homeland Security, Immigration Control Enforcement (ICE), into the operators of and subscribers to hard-care child pornography websites available world-wide over the Internet which was commenced in 2005 and designated "Operation Emissary." After the successful prosecution of hundreds of cases, court authorized wire intercepts, and seizures of several servers in Florida and Virginia, agents were able to identify hundreds of individuals in the United States who had successfully purchased child pornography subscriptions to the websites involved from November 2005 through February 2006 (Exhibit 1 ¶ 22). As a result of those phases of the investigation, Phase III, known as Operation Thin Ice, commenced. An individual (CW) who processed credit cards was arrested in March 2008. Through the cooperation of CW, a child pornography website was uncovered whereby various subscribers were detected. Logs connected to the website revealed the IP address of 68.99.10.89 had accessed the website from May 19, 2008, to June 14, 2008 (Exhibit 1 ¶ 50). The log files also revealed the e-mail address of kyle.b1@juno.com was used to access numerous videos of child pornography through the website and described the videos in detail. Purchases from the website using Brenner's e-mail address were made on May 17, 2008. ICE agents determined the IP address of the e-mail was controlled by Cox Communications, and on August 22, 2008, Cox Communications verified the IP address to be located at 2310 Hancock, Bellevue, Nebraska. Surveillance of the premises began on February 9, 2009, and identified a motor vehicle registered to Brenner. On March 2, 2009, agents subpoenaed credit card records for Brenner at the 2310 Hancock Street address in Bellevue. The affidavit set forth Agent Hugelman's training, knowledge, and experience in child pornography investigations regarding the hoarding of child pornography and the secretion of such materials. Agent Hugelman prepared the 40-page

affidavit, had it reviewed by an Assistant U.S. Attorney, and presented the affidavit to a United States Magistrate Judge on March 10, 2009. The search warrant was signed and issued on March 10, 2009, and executed on March 13, 2009.

## LEGAL ANALYSIS

**A.    Search Warrant**

Brenner asserts the search warrant lacks sufficient probable cause insofar as the information contained therein was stale.

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, ***Search & Seizure*** § 3.7(d) at 412 (4th ed. 2004). When reviewing the sufficiency of an affidavit "[a] totality of the circumstances test is used to determine whether probable cause exists. Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." ***United States v. Hager***, 710 F.3d 830, 836 (8th Cir. 2013). "[J]udges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." ***Hager***, 710 F.3d at 836. "Probable cause is established when there is a fair probability that the object of the search warrant may be found in the place to be searched." ***United States v. Romo-Corrales***, 592 F.3d 915, 919 (8th Cir. 2010) (internal quotation omitted).

As the Supreme Court stated in ***Illinois v. Gates***:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

***Illinois v. Gates***, 462 U.S. 213, 238 (1983). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." ***United States v. Stults***, 575 F.3d 834, 843 (8th Cir. 2009).

Stale information cannot be considered when assessing probable cause. "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014). "Probable cause must exist when a warrant is issued, not merely at some earlier time. . . ." *United States v. Morrison*, 594 F.3d 626, 631 (8th Cir. 2010). "A warrant becomes stale if the information supporting [the warrant] is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010). However, "[t]here is no bright-line test for determining when information is stale." *United States v. Preston*, 685 F.3d 685, 690 (8th Cir. 2012). The passage of time between when information is received and when a search warrant is executed "does not necessarily make probable cause fatally stale." *United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006) (internal quotations omitted). The court must consider "[t]ime factors . . . in the context of a specific case and the nature of the crime under investigation." *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008). Furthermore, when investigating ongoing criminal activity, intervals of weeks, months, or even years between the last described act and the application for a warrant does not necessarily make the information stale. *Morrison*, 594 F.3d at 631; *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010); *Jeanetta*, 533 F.3d at 655. "The lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *Lemon*, 590 F.3d at 614. Here, the object of the search was child pornography which lends itself to retention and secretion as described by Agent Hugelman in his affidavit. Brenner did not offer any evidence to the contrary.

Numerous cases have held that a lengthy lapse of time in child pornography cases does not render a search warrant to be stale. *United States v. Estey*, 595 F.3d 836 (8th Cir. 2010); *United States v. Morales-Aldahondo*, 524 F. 3d 115 (1st Cir. 2008) (3-year interval); *United States v. Allen*, 625 F.3d 830 (5th Cir. 2010) (18-month interval); *United States v. Freeman*, 2010 WL 4386897 (D. Minn. 2010) (citing cases with 3-month to 2-year intervals). Even in non-child pornography cases, when the last criminal act and the

execution of the search warrant spanned eighteen months where the search warrant explained the hoarding or secretion of evidence, the Eighth Circuit has upheld the search warrant. **Lemon**, 590 F.3d at 612. Given the circumstances of this case and the explanations contained in the affidavit, the lapse of time from May 17, 2008, to March 10, 2009, did not render the warrant deficient for being based on stale information.

B.  *Leon* Analysis

Even if the warrant contained stale information, the court must perform an analysis under **United States v. Leon**, 418 U.S. 897 (1984). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." **United States v. Leon**, 468 U.S. 897, 906 (1984) (citation omitted); **see also United States v. Hamilton**, 591 F.3d 1017, 1027 (8th Cir. 2010). "Ordinarily, '[e]vidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" **United States v. Cannon**, 703 F.3d 407, 412 (8th Cir. 2013) (**quoting United States v. Riesselman**, 646 F.3d 1072, 1078 (8th Cir. 2011)) (internal quotation marks omitted). "Because exclusion is a prophylactic remedy, however, there are some instances where a Fourth Amendment violation does not trigger the exclusionary rule." **Cannon**, 703 F.3d at 412. One such instance or exception to the exclusionary rule occurs "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even if the warrant is subsequently invalidated. **Leon**, 468 U.S. at 920-21.

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." **Cannon**, 703 F.3d at 412. "The officer must act with objective good faith and within the scope of the search warrant. In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the

affidavit[.]" *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012). The Eighth Circuit has recognized four circumstances that preclude a finding of good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Id.*

The Eighth Circuit has applied *Leon* when the search warrant application cites information gathered in violation of the Fourth Amendment. **See, e.g.**, *United States v. Kiser*, 948 F.2d 418, 421 (8th Cir. 1991); *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989) ("[E]vidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid."). For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the detectives' prewarrant conduct must have been "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Conner*, 127 F.3d 663, 667 (8th Cir.1997) (**quoting** *White*, 890 F.2d at 1419). If "the officers' prewarrant conduct is 'clearly illegal,' the good-faith exception does not apply." *Id.* (**quoting** *United States v. O'Neal*, 17 F.3d 239, 242-43 n.6 (8th Cir. 1994)).

Agent Hugelman has executed child pornography search warrants in the past, he reviewed his affidavit with an Assistant U.S. Attorney who authorized him to present it to U.S. Magistrate Judge Gossett. Judge Gossett, a neutral and detached magistrate, reviewed the 40-page affidavit an authorized the issuance of the warrant. Agent Hugelman had a good faith belief in the validity of the search warrant. As such, the good faith exception under *Leon* would apply in this case in the event the affidavit was found to contain stale information.

**C.      Brenner's Interview**

Brenner also seeks to suppress his statement to Agent Hugelman given in the bedroom of Brenner's residence on March 13, 2009. While Brenner was initially in custody when the officers entered Brenner's residence, rousted him from bed, and placed him in handcuffs, Brenner's handcuffs were later removed, Brenner was told he was not going to be arrested and was free to leave. Even though not in custody, Agent Hugelman read Brenner his *Miranda* rights and had Brenner read the form. The language on the form that he was in custody was crossed out and Brenner signed the form and waived his rights. Brenner agreed to talk with the agents.

As the court previously noted, the court credits Agent Hugelman's version of Brenner's interview rather than that of Brenner. The court finds no promises were made to Brenner in order for Brenner to answer questions. Brenner was unhandcuffed, allowed to put on some clothes, and was seated in another bedroom when Agent Hugelman informed Brenner he was not under arrest, would not be arrested, and could leave the residence if he wanted. Whereupon, Brenner was read his *Miranda* rights, waived those rights, and consented to talk with Agent Hugelman.

It is well settled that a law enforcement official is required to advise an individual of his or her *Miranda* rights before questioning if that individual is in custody. ***United States v. Williams***, 760 F.3d 811, 814 (8th Cir. 2014). "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." ***Id.*** (internal quotation marks omitted). Whether an individual was in custody is an objective inquiry and a court considers the totality of the circumstances that confronted the individual. See ***J.D.B. v. North Carolina***, 131 S. Ct. 2394, 2402 (2011); ***Williams***, 760 F.3d at 814.

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. . . . [T]he court must apply an objective test to resolve the ultimate inquiry: was there a

>formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

***Diaz***, 736 F.3d at 1148-49 (**quoting *United States v. Griffin***, 922 F.2d 1343, 1349 (8th Cir. 1990)). Application of these factors is not mechanical and the issue of whether an individual is in custody "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." ***United States v. Lowen***, 647 F.3d 863, 867 (8th Cir. 2011) (**quoting *United States v. Czichrary***, 378 F.3d 822, 827-28 (8th Cir. 2004); **see also *United States v. Perrin***, 659 F.3d 718, 720 (8th Cir. 2011) ("***Griffin*** is simply a rubric for considering the ultimate issue, not a mandatory checklist.").

While initially in custody at the time he was rousted out of bed and handcuffed, Brenner was not interrogated. Later when the handcuffs were removed and he was told he was not being arrested and was free to leave the premises, Brenner was interrogated. At that time Brenner was not in custody; however, Agent Hugelman advised Brenner of his ***Miranda*** rights after noting on the Advice of Rights form that Brenner was not in custody.

Brenner argues he was promised he would not be arrested and could go to work if he talked with the agents. If such promise were made, Brenner's statement could be considered involuntary. The touchstone for the admissibility of a defendant's statements is voluntariness. ***Brown v. Mississippi***, 297 U.S. 278 (1936). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." ***United States v. Perry***, 714 F.3d 570, 574 (8th Cir. 2013) (**quoting *United States v. LeBrun***, 363 F.3d 715, 724 (8th Cir. 2004)). "To determine whether a confession is voluntary, we look at 'the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused.'" ***United States v. Vega***, 676 F.3d 708, 718 (8th Cir. 2012) (**quoting *United States v. Boslau***, 632 F.3d 422, 428 (8th Cir. 2011)). Among the factors the court considers are "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." ***United States v. Wallace***, 713 F.3d 422, 426 (8th Cir. 2013) (**quoting *Vega*, 676 F.3d at 718). It is the government's burden to "prove by a

preponderance of the evidence that the challenged statements were voluntary." ***Boslau***, 632 F.3d at 429 (**quoting** *LeBrun*, 363 F.3d at 724).

The court finds no promises were made to Brenner in order to induce him to make a statement. The court finds Brenner's statement to have been given voluntarily and should be admissible in his trial.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Brenner's Motion to Suppress Evidence (Filing No. 23) and Motion to Suppress Statements (Filing No. 25) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 19th day of December, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge